IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-01277-REB-CBS

JOE ANZURES,
    Plaintiff,
v.

FLAGSHIP RESTAURANT GROUP, a Nebraska company, and
NICK HOGAN,
    Defendants.

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Magistrate Judge Craig B. Shaffer

This civil action comes before the court on "Defendants' Motion to Dismiss Amended Complaint." This matter was referred to the Magistrate Judge by the Order Referring Motions (Doc. # 37). The court has carefully considered the arguments presented in the parties' briefs (Docs. # 19, # 28, # 29, # 35, # 42, and # 43), the affidavit(s) and exhibits (Docs. # 20 through # 20-7, Docs. # 28 through # 28-5), the arguments made at the hearings (*see* Courtroom Minutes/Minute Orders (Docs. # 27, # 30, # 41, # 44), Transcript (Doc. # 44)), and the applicable case law and is sufficiently advised in the premises.

I.    Statement of the Case

Mr. Anzures filed a state court civil action against Defendants in the District Court for the City and County of Denver, Colorado. (*See* Complaint and Jury Demand (Doc. # 1-1)). Defendants removed the action to this court based on diversity of citizenship. *See* 28 U.S.C. § 1332(a)(1), Notice of Removal (Doc. # 1). Mr. Anzures's claims arise from his and Flagship's interests in Industria Payment Solutions ("Industria"). Mr. Anzures brings four claims in his

1

Amended Complaint ("AC") for: (1) breach of fiduciary duty against both Defendants, (2) fraud against Defendant Flagship, (3) negligent misrepresentation against Defendant Flagship, and (4) breach of contract against Defendant Flagship.   (*See* AC (Doc. # 33)).

II.   Standard of Review

Defendants have moved to dismiss pursuant to, *inter alia*, Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction.   The plaintiff bears the burden of establishing personal jurisdiction over the defendant.   *OMI Holdings v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998).   "In the preliminary stages of litigation, Plaintiff's burden is light."   *Walker v. Wegener*, 2012 WL 1020673, at *3 (D. Colo. Mar. 2, 2012) (citing *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995)).   "Where, as here, there has been no evidentiary hearing, and the motion to dismiss for lack of personal jurisdiction is decided on the basis of affidavits and other materials, Plaintiff[ ] need only make a *prima facie* showing that jurisdiction exists."   *Walker*, 2012 WL 1020673, at *3 (internal citation omitted).   *See also Pytlik v. Prof'l Res., Ltd.*, 887 F.2d 1371, 1376 (10th Cir. 1989) (Plaintiff "has the duty to support jurisdictional allegations in a complaint by competent proof of the supporting facts if the jurisdictional allegations are challenged by an appropriate pleading.").   The court resolves any factual disputes in Mr. Anzures's favor.   *See Beyer v. Camex Equip. Sales & Rentals, Inc.*, No. 10-CV-01580-WJM-MJW, 2011 WL 2670588, at *2 (D. Colo. July 8, 2011) ("Any factual conflicts must be resolved in the plaintiff's favor."), *aff'd* 465 F. App'x 817 (10th Cir. 2012).

III.     Analysis

"To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show both that jurisdiction is proper under the laws of the forum state and that the exercise of jurisdiction would not offend due process."  *Intercon, Inc. v. Bell Atl. Internet Solutions*, 205 F.3d 1244, 1247 (10th Cir. 2000) (citation omitted).  Because Colorado's long-arm statute permits the exercise of any jurisdiction that is consistent with the United States Constitution, the personal jurisdiction inquiry under Colorado law "collapses into the single due process inquiry."  *Intercon,* 205 F.3d at 1247 (citation omitted).  *See also Beyer*, 2011 WL 2670588, at *3 (The court "need only address the constitutional question of whether the exercise of personal jurisdiction over [Defendants] comports with due process.").

"The Due Process Clause permits the exercise of personal jurisdiction over a nonresident defendant so long as there exist minimum contacts between the defendant and the forum State."  *Intercon,* 205 F.3d at 1247 (internal quotation marks and citation omitted).  The minimum contacts requirement protects a defendant from "being subject to the binding judgment of a forum with which [it] has established no meaningful contacts, ties, or relations." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (internal quotation marks and citation omitted).  The defendant must have "fair warning that a particular activity may subject [it] to the jurisdiction of a foreign sovereign."  *Id.*  "[T]he question of whether a non-resident defendant has the requisite minimum contacts with the forum state to establish in personam jurisdiction must be decided on the particular facts of each case."  *Benton v. Cameco Corp.*, 375 F.3d 1070, 1076 (10th Cir. 2004) (internal quotation marks omitted).

"The minimum contacts standard may be met in two ways."  *Intercon,* 205 F.3d at 1247 (internal quotation marks and citation omitted).  "The inquiry whether a forum State may assert

specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. __, 134 S. Ct. 1115, 1121 (2014). "[A] court may, consistent with due process, assert specific jurisdiction over a nonresident defendant if the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *Intercon,* 205 F.3d at 1247 (citation omitted). *See also Beyer*, 2011 WL 2670588, at *3 ("A court may assert specific jurisdiction if the defendant has purposefully directed [its] activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities.") (internal quotation marks and citation omitted). "This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Rambo*, 839 F.2d at 1419. "It is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.*

"General jurisdiction, on the other hand arises when a defendant maintains continuous and systematic contacts with the forum state even when the cause of action has no relation to those contacts." *Beyer*, 2011 WL 2670558, at *3 (internal quotation marks and citation omitted). *See also Intercon,* 205 F.3d at 1247 ("When a plaintiff's cause of action does not arise directly from a defendant's forum-related activities, the court may nonetheless maintain general personal jurisdiction over the defendant based on the defendant's business contacts with the forum state.") (citation omitted). Because general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant's continuous and systematic general business

4

contacts." *Benton*, 375 F.3d at 1079 (internal quotation marks and citation omitted).  This court may maintain general jurisdiction over Defendants when their "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 134 S.Ct. 746, 760 (Jan. 14, 2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)).  " 'For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home.' "  *Id.*

"Even if defendant's actions created sufficient minimum contacts," the court "must still consider whether the exercise of personal jurisdiction over defendant would offend traditional notions of fair play and substantial justice."  *Intercon*, 205 F.3d at 1247 (internal quotation marks and citation omitted).  "This inquiry requires a determination of whether the district court's exercise of jurisdiction over defendant is reasonable in light of the circumstances surrounding the case."  *Id.*  The court considers the following factors in deciding whether the exercise of jurisdiction is reasonable: "(1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies."  *Id.* at 1249.

The facts are not necessarily in dispute.  Defendant Hogan is a resident of Nebraska. He is the Chief Executive Officer of Progressive Enterprises, Inc. ("Progressive"), a restaurant management company that is a Nebraska corporation with a principal place of business in Omaha, Nebraska.  (*See* Affidavit of Nick Hogan (Doc. # 20) at ¶ 5; Nebraska Secretary of State record (Doc. # 20-1), Deposition of Nick Hogan (Doc. # 28-4) at 2 of 31).  Progressive is

5

a member and the manager of Defendant Flagship Restaurant Group, LLC ("Flagship"). (*See* Doc. # 20 at ¶ 6, Doc. # 28-4 at 24 of 31). Flagship is a Nebraska limited liability company with a principal place of business in Omaha, Nebraska. (*See* Doc. # 20 at ¶ 7, Nebraska Secretary of State record (Doc. # 20-2)). Defendant Hogan is one of nine members with an interest in Flagship. (*See* Doc. # 20 at ¶ 8). Mr. Hogan's percentage interest in Flagship is approximately 32%. (*See id.,* Doc. # 28-4 at 5 of 31). Neither Flagship nor Mr. Hogan owns any real property, has conducted any continuous business, is registered to do business, solicits any business, or employs anyone in Colorado. (*See* Doc. # 20 at ¶¶ 57-62).

In May of 2013, Mr. Anzures and Jared Mitilier ("Mitilier"), who were high school classmates of Mr. Hogan's, contacted Mr. Hogan at Flagship's office in Omaha, Nebraska to discuss forming a business to sell pre-paid financial products to tribal gaming establishments. (*See* Doc. # 20 at ¶ 18, Affidavit of Joe Anzures (Doc. # 28-1) at ¶¶ 2-8, Doc. # 28-4 at 10 of 31). Mr. Anzures was to be the only employee and provide his time and expertise, Mr. Mitilier was to provide his experience in casinos and gaming insurance products, and Flagship was to serve as a passive investor in the new business. (*See* Doc. # 20 at ¶ 19, Doc. # 28-1 at ¶ 27-32, Doc. # 28-4 at 10-11, 13 of 31). In July of 2013, Mr. Hogan attended a meeting with Mr. Anzures and representatives of an advertising agency in Omaha, Nebraska, to discuss the marketing of the new business, named Industria Payment Solutions, LLC ("Industria"). (*See* Doc. # 20 at ¶¶ 20, 25). Following the initial meeting, Mr. Anzures, Mr. Mitilier, and Mr. Hogan had several telephone conversations regarding the formation of Industria. (*See* Doc. # 20 at ¶ 21, AC at ¶¶ 34-35). Based upon Mr. Mitilier's connections with gaming institutions in Nevada, Industria was formed as a Nevada LLC under Nevada law with its principal place of business in Omaha, Nebraska. (*See* Doc. # 20 at ¶¶ 25-26, 32, Doc. # 28-1 at ¶¶ 25-26, Doc. # 28-4 at 13

of 31, Nevada Secretary of State record (Doc. # 20-4), Doc. # 28-2 at 4 of 24, ¶¶ 2.03, 13.02). Industria's registered agent is CSC Services of Nevada, Inc. at the registered address 2215-B Renaissance Drive, Las Vegas, Nevada 89119.   (*See* Doc. # 20 at ¶ 26, Doc. # 20-4).   The three members of Industria and their respective initial interests in the company were: Flagship (50%), Mitilier (25%), and Plaintiff Anzures (25%).   (*See* AC at ¶ 47-48, Exhibit A to Industria's Operating Agreement (Doc. # 28-2) at 24 of 24, Doc. # 20 at ¶ 31).   Mr. Hogan is not a member of and has no ownership interest in Industria.   (See Doc. # 20 at ¶¶ 39-40).

Mr. Anzures retained an attorney in Colorado to draft an operating agreement for Industria.   (*See* Doc. # 28-4 at 13 of 31, Doc. # 20 at ¶ 27).   Drafts of the agreement were e-mailed to Mr. Hogan in Omaha, Nebraska and discussions between the three members of Industria were held on the telephone.   (*See id., Cf. G&G Int'l, LLC v. Camsing Co.*, No. 09-cv-00366, 2010 WL 466812 at *4 (D. Colo. Feb. 9, 2010) (no minimum contacts existed based on receipt of emails)).   On July 9, 2013, Mr. Hogan electronically signed Industria's Operating Agreement as CEO and authorized representative of Progressive, as manager of Flagship, in Flagship's capacity as a member of Industria, and not in any personal capacity. (*See* Doc. # 28-4 at 17, 24 of 31, Doc. # 20 at ¶¶ 28, 43, Operating Agreement (Doc. # 28-2)). On or about the same date, Mr. Anzures and Mr. Mitilier executed the Operating Agreement as members of Industria.   (*See* Doc. # 20 at ¶ 29).

Industria is governed by Nevada law.   (*See* Doc. # 20 at ¶ 33, Doc. # 28-2 at 21 of 24, ¶ 13.02).   Industria's books and records, both paper and electronic, are maintained at its principal office in Omaha.   (*See* Doc. # 20 at ¶ 33, Doc. # 28-2 at 14 of 24 ¶ 9.09).   All administrative support functions for Industria are located in Omaha, Nebraska.   (*See* Doc. # 20 at ¶ 34).   Industria's marketing company and bank account are located in Omaha, Nebraska.

(*See* Doc. # 20 at ¶¶ 37-38, Doc. # 28-4 at 14-15 of 31).   Mr. Anzures and Mr. Mitilier attended Industria meetings in Omaha, Nebraska.   (*See* Doc. # 20 at ¶ 36).   No meeting regarding Industria ever occurred in Colorado.   Industria never generated any business or revenue from Colorado.   (*See* Doc. # 20 at ¶ 34).   Mr. Anzures, Industria's only salesperson, was paid from Industria's Nebraska bank account.   (*See* Doc. # 28-4 at 18-19 of 31).

Flagship is the single member and manager of Denver Blue Sushi, LLC.   (*See* Doc. # 20 at ¶ 17, Doc. # 28-4 at 5 of 31, AC at ¶ 12).   Denver Blue Sushi, LLC is a Colorado limited liability company with a registered agent and address in Denver, Colorado, that operates the Blue Sushi Sake Grill located in Denver, Colorado ("Denver Blue Sushi").   (*See* Doc. # 20 at ¶¶ 12-15, Colorado Secretary of State record (Doc. # 20-3)).   Denver Blue Sushi, LLC leases the space where Denver Blue Sushi is located and does not own any real property in Colorado. (*See* Doc. # 20 at ¶ 16).   Mr. Hogan's only business contacts with Colorado have been through his role as CEO of Progressive, as the manager of Flagship, related to Flagship's membership interest in Denver Blue Sushi.   (*See* Doc. # 20 at ¶ 54, AC at ¶¶ 12-20, Doc. # 28-4 at 4, 6, 8, 9 of 31).   Mr. Hogan is not a member of and has no ownership interest in Denver Blue Sushi, LLC.   (*See* Doc. # 20 at ¶¶ 41-42).   Denver Blue Sushi, LLC has no affiliation with Industria and the claims in the AC do not relate to Denver Blue Sushi, LLC.   (*See* Doc. # 20 at ¶¶ 46-47, 51).

Mr. Anzures resides in Colorado.   Mr. Anzures alleges and argues that he conducted business activities in Colorado on behalf of Industria.   (*See* AC at ¶¶ 21-33, Response (Doc. # 42) at 2-4 of 20, Doc. # 28-1 at ¶¶ 2-35, Doc. # 28-4 at 12 of 31).   Industria is not a party to this lawsuit and Industria's contacts with Colorado do not establish that Flagship or Mr. Hogan had the requisite minimum contacts with Colorado.   Mr. Anzures's reliance on his own Colorado

8

connections is misplaced. *Giduck v. Niblett*, __ P.3d __, 2014 COA 86, 2014 WL 2986670, at * 6 (Colo. App. July 3, 2014). "[P]ersonal jurisdiction cannot be based on interaction with a plaintiff known to bear a strong connection to the forum state." *Rockwood Select Asset Fund XI (6)-1, LLC v. Devine, Millimet & Branch*, 750 F.3d 1178, 1180 (10th Cir. 2014) (citing *Walden*, 134 S.Ct. at 1122–26). "In properly viewing the focus of the minimum contacts analysis, . . . it is the defendants, not plaintiffs or third parties, who must create contacts with the forum state. . . ." *Giduck*, 2014 WL 2986670, at * 5. *See also New Frontier Media, Inc. v. Freeman*, 85 P.3d 611, 614 (Colo. App. 2003) (contacts that exist with a state due to a plaintiff's unilateral acts have been held insufficient to establish personal jurisdiction).

The court concludes that Mr. Anzures does not make even a prima facie showing of the minimum contacts with Colorado that are necessary for the court to exercise specific or general jurisdiction over Defendants. Defendant Flagship is not incorporated under the laws of Colorado and does not have its principal place of business in Colorado. Mr. Hogan is not a resident of Colorado. Defendants do not own property, maintain an office, or employ any persons other than Mr. Anzures in Colorado. (*See* Deposition of Jared Mitilier (Doc. # 28-5) at 6 of 6). Any actions that Mr. Hogan conducted with respect to Industria were pursuant to his role as a representative of Flagship. (*See* Doc. # 28-4 at 19-20, 24 of 31). Any contacts with Colorado by Flagship are not Mr. Hogan's individual contacts. Mr. Anzures argues that Flagship's and Mr. Hogan's roles in Denver Blue Sushi, LLC establish minimum contacts. (*See* Doc. # 42 at 7-8 of 20). However, any contacts with Colorado by Mr. Hogan or Flagship are related to Denver Blue Sushi, LLC or an occasional vacation and not to the subject matter of this lawsuit. (*See* Doc. # 28-4 at 3-4 of 31, *Trierweiler v. Croxton and Trench Holding Corp.*, 90 F.3d 1523, 1543-44 (10th Cir. 1996) (no general jurisdiction although defendant owned property

in Colorado and traveled to Colorado several times a year)).   Defendants do not have minimum contacts with Colorado based on Mr. Anzures's residency in Colorado.   *See Burger King Corp. v. Rudzewicz*, 471 U.S. at 472 ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.").   Defendants did not purposefully avail themselves of the privilege of conducting business in Colorado, did not conduct any activities in Colorado that were related to Mr. Anzures's claims, and do not have continuous and systematic business contacts with Colorado.

Even if Defendants' contacts with Colorado were sufficient, the factors for assessing reasonableness also weigh against exercising personal jurisdiction over Flagship or Mr. Hogan.   As Flagship is headquartered and Mr. Hogan resides in Omaha, Nebraska, Defendants would be burdened if they were required to litigate in Colorado.   Colorado has no interest in this litigation, as it involves a Nevada LLC and will likely require the application of Nevada law.   As several of the witnesses identified live in Nebraska or outside of Colorado, Mr. Anzures is the only party or witness for whom Colorado is a more convenient forum.   (*See* Doc. # 20 at ¶¶ 71-74*, MemoryTen, Inc. v. LV Admin. Servs., Inc.*, 942 F. Supp. 2d 1157, 1166-67 (D. Colo. 2013) (exercise of personal jurisdiction was not reasonable when defendants resided out of state and witnesses were located in California or New York), *vacated in part on reconsideration on other grounds*, 2014 WL 321338 (D.Colo. Jan. 29, 2014)).   Colorado does not appear to be the most efficient place to litigate the dispute.   Colorado has no greater interest in enforcing tort and contract laws in this case than Nebraska or any other state.   In sum, the AC is properly dismissed pursuant to Rule 12(b)(2)for lack of personal jurisdiction.

Accordingly, IT IS RECOMMENDED that Defendants' Motion to Dismiss the Amended Complaint (Doc. # 35) be GRANTED and that this civil action be dismissed without prejudice.

**Advisement to the Parties**

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999). (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Refining Sys., Inc.*, 52 F.3d 901 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate

Judge's ruling).   *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado this 14th day of July, 2015.

BY THE COURT:

s/Craig B. Shaffer
United States Magistrate Judge